IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| NATIVE ECOSYSTEMS COUNCIL, and ALLIANCE FOR THE WILD ROCKIES, | ) ) ) | CV 10-43-M-DWM |
| Plaintiffs, | ) ) | |
| vs. | ) ) | ORDER |
| LESLIE WELDON, Regional Forester of Region One of the U.S. Forest Service, UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture, and UNITED STATES FISH & WILDLIFE SERVICE, an agency of the U.S. Department of Interior, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## I. Introduction

Native Ecosystems Council and Alliance for the Wild Rockies (collectively "Plaintiffs") brought this action against the Regional Forester of Region One, the United States Forest Service ("Forest Service") and the United States Fish and Wildlife Service (collectively "Defendants") challenging the Forest Service's

decision authorizing implementation of the Elliston Face Hazardous Fuels Reduction Project (the "Project").  The Court dismissed the action without prejudice after Defendants withdrew the challenged decision.

Plaintiffs now move for attorney's fees and costs.  They argue they are entitled to fees and costs under the Endangered Species Act ("ESA") because the litigation here was the catalyst to Defendants withdrawing the challenged decision. They seek $12,245.80.  Defendants respond that Plaintiffs' ESA claims did not play a catalytic role in withdrawing the decision, and as such fees and costs should not be awarded.  For the reasons that follow, the Court finds Plaintiffs are not entitled to their fees and costs.

## II.  Background

The Elliston Project calls for the reduction of hazardous fuels on 763 acres of National Forest System lands near the town of Elliston, Montana through a mix of commercial logging, mechanical thinning and other treatments.

The Project has a history of being approved only to then be withdrawn by the Forest Service.  The Forest Service first authorized the Project on September 14, 2005 under a categorical exclusion to the National Environmental Policy Act ("NEPA").  Authorization was soon withdrawn after the Forest Service decided the decision should have been subjected to the notice, comment and appeal

provisions of NEPA.  On March 6, 2006, the District Ranger re-approved the

Project.  Plaintiff Native Ecosystems Council administratively appealed, and the

Forest Service reversed the District Ranger's decision.  The Forest Service then

approved the project a third time on March 30, 2007.  This time Plaintiffs were

unsuccessful with their administrative appeals.  They filed suit on August 21,

2007.  See Alliance for the Wild Rockies v. Harp, CV-07-51-H-DWM.  The

Project was withdrawn on November 15, 2007, and the related case was dismissed

on February 12, 2008.

    That brings us to the current, challenged authorization of the Project.  On

November 28, 2009, District Ranger Duane Harp signed a Decision Notice and

Finding of No Significant Impact, re-approving implementation of the Elliston

Project.

    On May 3, 2010, Plaintiffs sued again challenging Defendants' fourth

approval of the Elliston Project.  Two of the Complaint's ten claims involve the

Endangered Species Act.  Claim five alleges the Project "violates [the National

Forest Management Act ("NFMA")] and the ESA because it increases road density

in the Project area, and the agencies' conclusion that it is 'not likely to adversely

affect' the grizzly bear is not based upon the best available science and is

arbitrary."  Compl. 36.  Claim six alleges "[t]he Forest Service is violating NFMA

and the ESA because the Project does not comply with the Forest Plan prohibition against degradation of lynx linkage habitat." Id. at 37.  The other eight claims sound in either NFMA or NEPA, and are based on allegations that "the Project violates Forest Plan requirements for elk winter range, elk calving areas, elk hiding cover and open road density, lynx habitat connectivity, grizzly bear habitat, and monitoring of population trends of management indicator species." Id. at 42-43.  Plaintiffs sought declaratory and injunctive relief to set aside the Project's approval.

On July 9, 2010, Defendants filed their answer, denying any violation of NFMA, NEPA or the ESA.   Then, on August 20, 2010, District Ranger Duane Harp signed a one-page letter withdrawing the November 28, 2009 decision authorizing the Project.[1]  The letter did not provide a reason for the withdrawal, but an August 26, 2010 newspaper article quoted Harp explaining that the Project

---

[1]The withdrawal letter states, in relevant part, as follows:
This letter provides notice that I am hereby withdrawing my November 28, 2009 Decision Notice for the Elliston-Face Hazardous Fuels Reduction Project.  The Forest Service will not proceed with the activities proposed by the Elliston-Face project until we undertake further analysis in accordance with all applicable law and make any new decision.  Any new decision, which has not yet been made, to proceed with activities in the Elliston-Face project area will be subject to all applicable administrative process as well as judicial review.  In addition, the Helena National Forest will involve the public in the analysis of any new proposal along with further consultation with state and federal agencies including the Montana Fish, Wildlife and Parks and incorporate the results of those discussions into any new decision.
(Dkt #9-1).

was recalled after learning of new data showing it would violate Forest Plan

standards for road densities and elk hiding cover.  Eve Byron, Elliston Face

Logging Plan Goes to Back Burner Again, HELENA INDEPENDENT RECORD, Aug.

26, 2010 (dkt #13-4).  On September 14, 2010, Harp published an editorial that

further explained his decision:

> I withdrew the Elliston decision because of new data from the state's
> Transportation Framework Project concerning the number of open roads in
> the area. The new data, which came to our attention well after the Elliston
> decision, was used in the analysis for our Hazard Tree Removal Project.
> That analysis resulted in a different calculation for the Spotted Dog Elk
> Herd Unit, showing we were not meeting hiding cover standards during
> hunting season due to the miles of open roads on both private and the
> National Forest lands in the area that includes the Elliston project.

Duane Harp, Let the Record Speak for Itself, HELENA INDEPENDENT RECORD,

Sept. 14, 2010 (dkt #13-5).

Defendants also submitted Harp's declaration, which states he withdrew the

Project decision "based solely on new data which the Forest Service had obtained

since [the] November 18, 2009 Elliston [Project] decision.  This new data

concerned the amount of existing open roads in the Spotted Dog Elk Herd Unit."

Harp Decl. ¶ 5, Oct. 12, 2010 (dkt #13-1).  Based on the data, the Forest Service's

calculation of the open road density for the Spotted Dog Elk Unit changed from

.78 to 1.51 miles per square mile.  Id. at ¶ 7.  This updated calculation exceeded

Forest Plan standard 4a.  Id.

On September 7, 2010, Plaintiffs moved to voluntarily dismiss their Complaint.  (Dkt #9).  The Court dismissed the action without prejudice on September 14, 2010.  (Dkt #10).  On September 28, 2010, Plaintiffs filed the instant motion for attorney's fees.  Plaintiffs argue they are entitled to fees and costs pursuant to the ESA's fee-shifting provision because their lawsuit was the catalyst to the Forest Service's withdrawal of approval for the Elliston Project.  In response, the government does not dispute that Plaintiffs' litigation played a role in its decision to rescind approval.  Instead, they assert approval was withdrawn because of Plaintiffs' NFMA claims and not their ESA claims.  Defendants insist that because the ESA claims played no role in the dismissal of this case, Plaintiffs are not entitled to attorney's fees.

Resolution of Plaintiffs' motion turns on two questions, one legal and one factual.  Legally, can the Court apply the catalyst theory to Plaintiffs' non-ESA claims to determine if Plaintiffs are entitled to fees and costs under the ESA's fee-shifting provision?  Then, if not, did the Forest Service withdraw approval of the Elliston Project independent of Plaintiffs' ESA claims?

### III.  Discussion

**A.     Applying the Catalyst Theory in a Mixed-Claims Action**

The catalyst theory allows for an award of attorney's fees to a civil rights plaintiff whose lawsuit caused defendant's change in conduct, even if the court does not enter a final judgment.  Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Servs., 532 U.S. 598, 601 (2001).

The Equal Access to Justice Act entitles a "prevailing party" in a NEPA or NFMA challenge to fees and costs.  Because the catalyst theory requires something less than a "prevailing party," the theory cannot be applied to NEPA or NFMA actions.  Id. at 605 (holding the catalyst theory invalid for federal statutes that allow courts to award attorney's fees and costs to the "prevailing party"); see also Perez-Arellano v. Smith, 279 F.3d 791, 794 (9th Cir. 2002) (applying the holding of Buckhannon to petitions for attorney's fees and costs under the Equal Access to Justice Act).

The catalyst theory is, however, a valid way to collect fees under the citizens suit provision of the ESA, which does not include a "prevailing party" requirement.  Assoc. of Cal. Water Agencies v. Evans, 386 F.3d 879, 885 (9th Cir. 2004).  Under that provision, "any person may commence a civil suit on his own behalf . . . against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary."  16 U.S.C. § 1540(g)(1)(C).  "The court, in issuing any final

order in any suit brought pursuant to [the citizen suit provision], may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." Id. § 1540(g)(4).

Plaintiffs insist that they are entitled to fees and costs under the catalyst theory because their "entire litigation strategy," which included ESA claims, was to prevent implementation of the Elliston Project and that is what they achieved here.  Defendants respond that the catalyst theory can only apply to Plaintiffs' ESA claims, and those claims did not play a role in the withdrawal of approval for the Elliston Project.  Thus, Defendants contend, Plaintiffs are not entitled to attorney's fees.

Buckhannon rules out Plaintiffs' NEPA and NFMA claims from being considered under the catalyst theory.  As such, it would be inappropriate to consider Plaintiffs' litigation strategy en masse.  See Citizens for Better v. U.S. Dep't of Agric., 497 F. Supp. 2d 1062, 1079 (N.D. Cal. 2007), rev'd on other grounds, 567 F.3d 1128 (9th Cir. 2009) ("[T]he logic of Buckhannon requires that the plaintiff must show that the claim or claims still eligible for catalyst treatment were the causative factor in changing the defendants' conduct.").  Instead, the Court should determine whether there is "some sort of clear, causal relationship between [Plaintiffs' ESA claims] and the practical outcome realized." Assoc. of

Cal. Water Agencies, 386 F.3d at 886.  As discussed in Citizens for Better, the best way to do this is "once the plaintiff [in a mixed-claims action] proves the ligation as a whole was a catalytic factor, the burden of proof shifts to the defendant to show its behavior would have been the same even if the ESA . . . claim had not been a part of the litigation."  Citizens for Better, 497 F. Supp. 2d at 1079.

Here, Plaintiffs' case played a role in producing the relief they sought.  The burden thus shifts to Defendants to show their change in conduct was unrelated to Plaintiffs' ESA claims.  As discussed below, Defendants have met their burden.

**B.    Causation**

Defendants provide a declaration, newspaper article and an editorial in which District Ranger Harp consistently states that he withdrew approval of the project based solely on new data obtained from an August 2010 report.  Based on these statements and supporting documents, and their chronology, it is clear that the Project was approved thinking the Spotted Dog Elk Herd Unit had .78 miles of open road density but subsequent data changed this calculation to 1.51 miles.  This updated open road density violates the Forest Plan, and withdrawing the project on such grounds does not relate to Plaintiffs' ESA claims.  Harp Decl. ¶¶ 5-8.

Plaintiffs argue against the notion that Defendants withdrew the Project

independent of the ESA claims in three separate ways.  First, Plaintiffs argue the

Court should not consider Harp's statements made after he signed the withdrawal

letter because they are post hoc rationalizations.  The argument fails on the facts.

While the Court should not defer to post hoc rationalizations to uphold agency

action, the rule applies when an agency is trying to legitimize action that was to be

contemporaneously supported at the time of the decision.  <u>Am. Textile Mfrs. Inst.,</u>

<u>Inc. v. Donovan</u>, 452 U.S. 490, 539-40 (1981).  The case here is different.  The

agency was not required to contemporaneously state why it withdrew the project,

and thus there is no reason to disregard Harp's statements to see if Defendants met

a court-created burden.

Next, Plaintiffs contend the Forest Service could not have withdrawn its

authorization based on this supposed new data because the data exists in the

administrative record.  Plaintiffs cite a 2005 Elliston Fuels Project Wildlife

Assessment that calculates an open road density of 1.5 miles per square mile for

the Spotted Dog Elk Analysis Area.  Elk Analysis Area data, however, is different

than that for an Elk Herd Unit.  <u>See Helena Hunters & Anglers, et al. v. Tidwell, et</u>

<u>al.</u>, CV 08-162-M-DWM, dkt #26 at 25 (explaining that an elk herd unit–unlike an

elk analysis area–includes private lands).[2]

Finally, Plaintiffs claim the withdrawal letter, which mentions that any future proposal will involve further agency consultation, proves the Forest Service rescinded the Project's authorization due to the ESA claims.  The call for further consultation appears to be generic language informing the public that any new proposal will comply with all relevant laws.  This language does not concede that the project was withdrawn due to inadequate consultation.  Nor does this vague language rebut Defendants' showing that road density data and concerns that the Project violated the Forest Plan led to its withdrawal.[3]

## IV.  Conclusion

The evidence before the Court is consistent, competent and unrebutted: Defendants withdrew the project due to a perceived NFMA violation, not because of Plaintiffs' ESA claims.  There is no reason or proof to presume Defendants

---

[2]In this same vein, Plaintiffs note the August 2010 Hazard Tree Project file–from which Defendants obtained the new data–includes a February 2010 document that states the open road density for the Spotted Dog Elk Herd Unit is 1.5 miles per square mile.  Even if it was appropriate for the Forest Service to rely on the February 2010 data, it postdates the November 2009 Project approval.

[3]Plaintiffs also implore the Court to award fees under the ESA because this is the fourth time approval for the Project has been withdrawn, and the second time it was withdrawn after Plaintiffs commenced litigation.  Plaintiffs suggest this pattern shows Defendants mischievously changed their conduct simply to avoid paying attorney's fees.  That does not appear to be the case.  Defendants changed their conduct upon discovery of new data.  This is the proper thing for the Forest Service to do given these circumstances.

acted in bad faith.  Because the ESA claims did not play a causative role in Defendants' change in conduct, Plaintiffs are not entitled to fees in this action.

Accordingly, IT IS HEREBY ORDERED that Plaintiffs' Motion for Attorney's Fees and Costs (dkt #11) is DENIED.

Dated this 28th day of February, 2011.

_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT